IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID SHIM )
)      Case No.: 23-CV-393
        Plaintiff, )
v. )      Judge  C. Bisson
)
ALLEGHENY COUNTY, PA. and )
ALLEGHENY COUNTY SHERIFF'S OFFICE )
)
        Defendants, )

---

MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS

NOW, comes Defendant, Allegheny County Sheriff's Office, by and through its solicitor,

John P. Goodrich, and files this Memorandum of Law in Support of Motion to Dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6) ("Motion").

I. FACTUAL AND PROCEDURAL BACKGROUND

1.      Plaintiff instituted this action via a Complaint against Allegheny County Sheriff's

Office in the United States District Court for the Western District of Pennsylvania on April 21,

2023. See Plaintiff's Complaint, attached hereto as Exhibit "A."

2.      Plaintiff's Complaint contains six counts: Count I alleges religious discrimination

under Title VII of the Civil Rights Act of 1964 for failure to accommodate the Plaintiff; Count II

and III allege violations by the Defendant of the Freedom of Speech Clause of the First

Amendment; Count IV alleges a violation of the Equal Protection Clause of the Fourteenth

Amendment; Count V alleges a violation of the Establishment Clause of the First Amendment; and

Count VI alleges discrimination in the workplace as under the Rehabilitation Act of 1973 section 504.

3.      Relevant to all claims, Plaintiff was subject to a policy created by Allegheny County and implemented by Defendant, Allegheny County Sheriff's Office that required <u>all</u> county employees to be vaccinated against COVID-19 by December 1, 2021, subject to exceptions as required by law.

4.      Plaintiff claims that the policy discriminated against him based upon his sincerely held religious beliefs and that the Allegheny County Sheriff's Office failed to reasonably accommodate those beliefs.

5.      The essence of Plaintiff's claims is that the Allegheny County Sheriff's Office allegedly failed to reasonably accommodate his religious beliefs by not allowing him to substitute vaccination with weekly testing and masking and allegedly suppressed Plaintiff's Free Speech and violated the Establishment and Free Exercise Clauses of the First Amendment by denying religious exemptions.  However, no accommodations were given to any employee for religious beliefs.

6.      For the reasons stated below, Plaintiff has failed to sufficiently state a claim for each Count.

## II. <u>STANDARD OF REVIEW</u>

7.      To establish a basis for dismissal under Fed. R. Civ. P. 12(b)(6), the movant must show that the plaintiff  fails to allege  "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). To be facially plausible, the Plaintiff must allege facts that are more than conclusory or speculative and "allo[w] the court to draw the reasonable inference that the defendant is liable" for the challenged conduct. *Id*. In reviewing  the  sufficiency  of  the  complaint,  the  court  should

disregard "labels and conclusions," "a formulaic recitation of the elements," and "bare" assertions absent "further factual enhancement." *Bell Atl. Corp.*, *v. Twombly*, 550 U.S. 544, 555–56 (2007).

8.     Courts use a three-step approach to evaluate the sufficiency of the complaint. *Iqbal*, 556 U.S. at 675. First, the court notes the elements the plaintiff must allege to state a valid claim. *Id.* Second, the court identifies conclusory allegations unworthy of the court's consideration. *Id.* At 679. Third, the court, accepting the remaining allegations as true, decides whether they plausibly state a valid claim for relief. *Id.*; *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Under these clear standards, Plaintiff David Shim's complaint should be dismissed due to its reliance on legal conclusions, barefaced allegations, and speculative assertions that cannot support a plausible claim for relief. *Twombly*, 550 U.S. at 555–56.

9.     Additionally, while Rule 12(b) does not specifically address Motions to Dismiss based upon the alleged expiration of the applicable Statute of Limitations, the prevailing rule is that a complaint which shows on its face that relief is barred by the affirmative defense of statute of limitations is properly subject to a Rule 12(b) (6) motion to dismiss for failure to state a claim upon which relief can be granted. *City of Painesville, Ohio v. First Montauk Financial Corp.*, 178 F.R.D. 180, 193 (N.D. Ohio 1998) (citing *Rauch v. Day & Night Manufacturing Corp.*, 576 F.2d 697, 702 (6th Cir.1978)).

### III. <u>ARGUMENT</u>

**A. THE COURT SHOULD DISMISS THE TITLE VII CLAIM BECAUSE PLAINTIFF FAILED TO FILE WITHIN THE STATUTE OF LIMITATIONS.**

10.     Defendant hereby incorporates paragraphs 1 through 9 of this Motion as if fully set forth herein.

11.     In Count I of the Complaint, Plaintiff makes a claim under Title VII of the Civil Rights Act of 1964 for religious discrimination caused by failure to accommodate the Plaintiff.

12.     Under Title VII, individuals who believe they have been subjected to workplace discrimination must file a charge with the Equal Employment Opportunity Commission (EEOC). 42 U.S.C.A. § 2000e.

13.     A claim for religious discrimination typically must be filed within 180 days of the date of discrimination; however, this time limit is extended to 300 days if there is a state or local agency that enforces a law prohibiting employment discrimination in the same jurisdiction. 29 C.F.R. § 1601.13.

14.     In Pennsylvania, the Pennsylvania Human Relations Commission (PHRC), is a state agency responsible for enforcing the Pennsylvania Human Relations Act, which prohibits discrimination in employment. Because of its existence, the time period in which a filing must be made in Pennsylvania is 300 days.

15.     The date of discrimination refers to the date the alleged discriminatory act occurred. Here, at its latest, the alleged date of discrimination is the termination of Plaintiff's position within the Sheriff's department, which occurred on February 2, 2022, as per the relevant records, including Plaintiff's complaint.

16.     From the date of the alleged discrimination, the termination on February 2, 2022 being the latest possible date of discrimination, Plaintiff had 300 days to either file with the EEOC or with the PHRC.

17.     Plaintiff filed with the EEOC and the PHRC on December 8, 2022, as stated in his complaint. The timeframe between February 2, 2022, and December 8, 2022, is exactly 309 days.

18.     Plaintiff's claim has expired since he failed to file his complaint within the calculated 300-day extended statute of limitations.

19.     Therefore, Plaintiff has failed to sufficiently state a claim upon which relief can be granted.

**B.     THE COURT SHOULD DISMISS CLAIMS II FOR THE ALLEGED VIOLATION OF THE FREEDOM OF SPEECH AND CLAIM III FOR AN ALLEGED VIOLATION OF THE FREE EXCERSISE CLAUSE AS PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER THE CLAUSE.**

20.     Defendant hereby incorporates paragraphs 1 through 19 of this motion as if fully set forth herein.

21.     Plaintiff alleges that the policy set by Defendant Allegheny County Sheriff's Office violated his First Amendment right to Freedom of Speech and his rights under the Free Exercise Clause by censoring his private religious expression by denying his religious exemption.

22.     In claiming so, Plaintiff alleges that, "upon information and belief," Defendant participated in content-based restrictions and viewpoint discrimination by granting religious exemptions to members of other sects and religions, but denying exemptions to Christians.

23.     Content-based restrictions are distinct from content-neutral restrictions as they require separate standards of judicial review to establish the constitutionality of the restriction.

24.     Content-based restrictions are restrictions that target speech based on its communicative content and may be justified only by surviving strict scrutiny review, if the government proves that they are narrowly tailored to serve a compelling state interest. *Reed v. Town of Gilbert, Ariz*., 576 U.S. 155, 163-64 (2015).

25.     Content-neutral restrictions are unrelated to the specific content or viewpoint. Content-neutral restrictions are often imposed to regulate the time, place, and manner of expression

to maintain public order or protect public safety. Content-neutral restrictions are subject to the standard of intermediate scrutiny review which requires that the restriction further an important government interest and be substantially related to that interest. However, content-neutral time, place, and manner restrictions that regulate non-public forums, such as government buildings, are only required to be viewpoint neutral and reasonably related to a legitimate government purpose. To be viewpoint neutral, there cannot be a limitation on one viewpoint but not another.

26.     Defendant Allegheny Sheriff's Office did not grant any exemptions or accommodations. The policy set forth by the County of Allegheny and implemented by Defendant required <u>all</u> employees to be vaccinated by the stated deadline or else face termination.

27.     The policy did not restrict religious speech, only the time, place, and manner of speech. The time and place being while working for the Allegheny Sheriff's Office and the manner being putting others at risk while working while unvaccinated for COVID-19. Therefore, the restriction was content-neutral and not content-based. Additionally, the policy does not discriminate based on viewpoint as <u>all</u> employees are required to be vaccinated.

28.     Since the policy allegedly restricted speech in a government building, a non-public forum, it must only be viewpoint neutral and reasonably related to a government purpose. As explained below, the policy meets this low standard of judicial review.

29.     In *Spivack v. City of Philadelphia*, ___F.Supp.3d___ (E.D. Pa. 2023), the Eastern District Court decided a case concerning the denial of religious exemptions for a covid policy set by a District Attorney's office in Philadelphia, Pennsylvania. The court held that the District Attorney's decision to eliminate religious exemptions to a policy requiring employees to receive COVID-19 vaccination:

- **<u>did not stem from religious intolerance;</u>**

- a stringent medical exemption to the policy and religious exemption to the policy did not regulate comparable conduct;

- the medical exemption to policy was not individualized and discretionary so as to undermine policy's general applicability;

- **the policy was rationally related to achieving office's interests;**

-  the refusal to grant religious exemptions furthered the interest of District Attorney's Office in protecting its staff; and public from spread of deadly virus;

- **and the policy was narrowly tailored to serve office's interest.** *Id* at 12.

30.     Further, the court in *Spivack* held that "[o]nly a law that is not neutral respecting religion or not generally applicable must pass strict scrutiny, and so "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest" and "[a] neutral law of general applicability is subject only to rational basis review, even if it incidentally burdens a religious practice." *Spivack,* ___F.Supp.3d___ (E.D. Pa. 2023) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993)).

31.     For a policy to be neutral, the court in *Spivack* stated that it, at minimum, must not be discriminatory on its face and that it additionally must not "target religious conduct for distinctive treatment." *Id*. at 5. In determining whether the policy targeted religious conduct, the court weighed several factors, one of which was the specific series of events leading to the official policy in question. The court concluded that the circumstances in the case, the COVID pandemic and rising infection numbers, confirmed that the District Attorney Office's policy arose from a "deep concern for public health, which is a religion-neutral government interest." *Id.*

32.     In this case, the vaccination policy is neutral. The policy is facially neutral as it applies to <u>all</u> employees in Allegheny County, including Defendant Allegheny County Sherriff's Office, and does not single out any person or groups of people. Additionally, like in *Spivack*, the

7

policy arose from a deep concern for public health caused by rising infection numbers of Covid-19. Therefore, the policy served a religion-neutral government interest.

33.     In *Spivack*, the court held that a law or policy is not generally applicable if it "(1) prohibits religious conduct but permits comparable secular conduct; or (2) if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Id* at 7.

34.     In this case, the policy does not prohibit religion while permitting comparable secular conduct as no exemptions have been granted. Even if medical exemptions were granted by Defendant but not religious exemptions, the court in *Spivack* held that the medical exemptions granted by the District Attorney's office to individuals who would be more at risk by becoming vaccinated than if they had not, furthered the policy's purpose of promoting health and safety, while granting a religious exemption would threaten the policy's goal. Thus, the two were not comparable conduct and thus, did not undermine the policy's general applicability. *Id.* at 8.

35.     Additionally, the court in *Spivack* held that the medical exemption granted by the District Attorney's office did not undermine the policy's general applicability as the approved medical exemption was for an objectively and narrowly defined category of persons. *Id.*

36.     In the present case, Plaintiff does not sufficiently plead that the Defendant's policy is not neutral and generally applicable, therefore, rational-basis review should be applied to the policy. Thus, the policy must be rationally related to a legitimate government interest.

37.     Here, the policy neutral, generally applicable, and is rationally related to the legitimate purpose of stemming the spread of COVID-19 and promoting health and safety. Therefore, the policy does not violate Plaintiff's constitutional rights.

38.     Alternatively, if Defendant's policy is not deemed to be neutral and generally applicable, then the standard of strict scrutiny review applies. Since the policy is narrowly tailored to serve the compelling state interest of stemming the spread of COVID-19 and promoting health and safety, it also survives strict scrutiny review. The court in *Spivack*, in caution, also applied a strict scrutiny analysis to the District Attorney Office's policy.

39.     In determining whether the District Attorney's policy served a compelling government interest, the court cited to *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020), which held that "[s]temming the spread of COVID-19 is unquestionably a compelling interest."

40.     Further, the court stated that "[n]arrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID." *Spivack*, ___F.Supp.3d___ (E.D. Pa. 2023) (citing *Tandon v. Newsom*, 141 S. Ct. 1294, 1296-97 (2021)). Accordingly, the defendant must show that it considered less restrictive alternatives and ruled them out for good reason. *Spivack*, ___F.Supp.3d____ (E.D. Pa. 2023) (citing *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016)).

41.     In *Spivack*, the court agreed with the Defendant's argument that weekly COVID-19 testing was expensive and ineffective, and that masking was too difficult to enforce, assuming it was even effective at preventing the spread of COVID-19. The Defendant also noted the inability to perform the tasks required by the job remotely. By the Defendant's showing that it had weighed these options and determined that they would negatively affect the goal of the policy, the court found that the defendant's policy was narrowly tailored and the least restrictive means to accomplish the compelling government interest. *Id.* at 10-12.

42.     In this case, Plaintiff opines that masking and testing are reasonable alternatives to the vaccine. However, the masking and weekly testing not only unduly burden Defendant by creating expenses and potentially causing gaps in employment when Plaintiff or others test positive, but it significantly and negatively affects the purpose of the policy. Weekly testing and masking are unlikely to stem the spread of COVID-19 within the workplace or protect the health of employees and the general public. Weekly testing does not guarantee that an individual will not contract covid directly after testing or within the window between tests and spread COVID throughout the workplace. Additionally, masking is not conducive of the goal of the policy as it is difficult to police, assuming it is effective at all.

43.     As a deputy sheriff, Plaintiff was subject to physical interaction with not only his peers, but with the general public. A deputy sheriff's duties include, but are not limited to: law enforcement, arrest and detention, courtroom security, public safety, etc. These responsibilities require physical presence and contact. Therefore, hybrid employment is not an option.

44.     Because Defendant's policy is narrowly tailored, employing the least restrictive means to serve the compelling state interest of stemming the spread of COVID-19 and promoting health and safety, it survives strict scrutiny review similar to the policy in *Spivack.*

45.     Therefore, Plaintiff fails to state a claim upon which relief can be granted.

46.     Furthermore, there is no constitutional right to a religious exemption from a vaccine mandate. Federal courts have found that vaccine mandates do not violate the Free Exercise Clause of the First Amendment. *See, e.g. Spivack,* ___F.Supp.3d___ (E.D. Pa. 2023); *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (stating that there is no constitutional right to a vaccine exemption); *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) (rejecting Free Exercise challenge to mandatory student-vaccination requirement and holding that "New York could constitutionally

require all children to be vaccinated to attend public school"); and *Harris v. University of Massachusetts, Lowell*, 557 F.Supp.3d 304, 315 (D. Mass. Aug. 27, 2021).

### C.  THE COURT SHOULD DISMISS CLAIM IV FOR ALLEGED VIOLATION OF THE EQUAL PROTECTIONS CLAUSE AS PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNER THE CLAUSE.

47.     Defendant hereby incorporates paragraphs 1 through 45 of this motion as if fully set forth herein.

48.     Plaintiff additionally claims that his rights were violated under the Equal Protection Clause. The Equal Protection Clause acts as a safeguard against discrimination by the government and requires that all individuals be treated equally under the law. Under the Equal Protection Clause, laws discriminating against suspect classes, including religion, are subject to the standard of strict scrutiny review. U.S. Const. Amend. XIV.

49.     If a restriction enforced by the state is facially-neutral, the Plaintiff must prove the existence of a discriminatory purpose and disproportionate and discriminatory effect. Otherwise, the Court must apply the standard of rational-basis review to the state restriction. *McClesky v. Kemp*, 481 U.S. 279 (1987); *City of Mobile v. Bolden,* 446 U.S. 55 (1980); *Personnel Administrator of Massachusettes v. Feeny,* 442 U.S. 156 (1979).

50.     In this case, the restriction is facially neutral as it required <u>all</u> Allegheny County employees to become vaccinated by December 1, 2021, regardless of religious affiliation.

51.     In his complaint, Plaintiff pleads insufficient facts to establish a discriminatory purpose or motive behind the policy. Again, the policy was enacted for the purpose of stemming the spread of COVID-19 and promoting health and safety.

52.     Defendant has granted no exemptions or accommodations and the policy has impacted both secular and non-secular persons against the vaccine alike. Further, many Christian

churches, including Plaintiff's church, have not taken a stance for or against the COVID-19 vaccine. *Divine Healing*, Assemblies of God, https://ag.org/Beliefs/Position-Papers/Divine-Healing (last visited June 6, 2023).

53.    Therefore, the Court should apply the rational-basis standard of review to the policy and find that the policy is rationally related to the legitimate state interest of stemming the spread of COVID-19 and promoting health and safety as the COVID-19 vaccine helps protect against, and slow the spread of, COVID-19.

54.    Alternatively, if the Court should find that the policy was enacted with a discriminatory intent and that there was disproportionate impact against members of the Christian faith, and thus apply the standard of strict scrutiny review, the policy should still prevail under that analysis as decided in *Spivack*.

## D.  THE COURT SHOULD DISMISS CLAIM V FOR ALLEGED VIOLATOIN OF THE ESTABLISHMENT CLAUSE BECAUSE PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER THE CLAUSE.

55.    Plaintiff hereby incorporates paragraphs 1 through 53 of this motion as if fully set forth herein.

56.    Plaintiff further alleges his rights were violated under the Establishment Clause. The Establishment Clause acts as a specific prohibition on forms of state intervention in religious affairs. U.S. Const. Amend. I.

57.    For the reasons stated above, the Establishment Clause is not applicable in this scenario as the COVID-19 policy does not discriminate against, prohibit, nor establish religious activity.

58.    If this Court elects to analyze the Establishment Clause claim, the Court should consider the historical practices and understandings of the act in question to establish whether the

government has violated the Establishment Clause. *Kennedy v. Bremerton School District*, 597 U.S. ___ (2022) (abandoning the *Lemon* test for the historical practices and understandings test).

59.     In this case, the mandatory vaccine policy set by Allegheny County and implemented by Defendant is an act that has been upheld as constitutional in synonymous situations for over 100 years.  See *John Does 1-3 ET. AL. v. Janet T. Mills, Governor of Maine, ET AL.* 595 U.S. ___ (2021) (denying injunctive relief against a COVID-19 vaccination policy requiring certain healthcare workers to become vaccinated with no religious exemption for sincerely held religious beliefs); *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (holding that a state may enact a compulsory vaccination law since the legislature may decide whether vaccination is the best way to protect public health); and *Spivack*, ___F.Supp.3d___ (E.D. Pa. 2023).

60.     As shown by established caselaw, mandatory vaccination policies are a constitutionally upheld historical practice. Therefore, the policy is subject to the standard of rational-basis review. In the instant action, the policy is rationally related to the legitimate government purpose of stemming the spread of COVID-19 and promoting health and safety.

61.     If the Court should find that the standard of strict scrutiny review applies, this policy should survive that review for the same reasons as explained above in accordance with the findings in *Spivack.*

**E. THE COURT SHOULD DISMISS CLAIM VI FOR AN ALLEGED VIOLATION OF THE REHABILITATION ACT BECAUSE PLAINTIFF FAILS TO PLEAD SUFFICIENT FACTS FOR RELIEF UNDER THE ACT.**

62.     Defendant hereby incorporates paragraphs 1 through 60 of this motion as if fully set forth herein.

63.     In Count VI of the complaint, Plaintiff makes a claim under the Rehabilitation Act of 1973, section 504, for workplace discrimination based upon alleged discrimination for

Plaintiff's stress and anxiety due to the denial of his exemption, his suspension, and likely termination.

64.     The Rehabilitation Act, (the Act), prohibits discrimination against individuals with disabilities. The Act defines a disability as a physical or mental impairment that constitutes or results in a substantial impediment to employment; or a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment.

29 U.S.C.A. § 705(9).

65.     The Act defines major life activities as, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. *Id.*

66.     Here, Plaintiff insufficiently pleads that he has a disability and shows no record of the same. Plaintiff fails to plead facts sufficient to establish that his stress and anxiety caused by the denial of his religious exemption request, suspension, and likely termination, is a substantial impediment to employment or limits one or more major life activities.

67.     To state a claim under the Act, a plaintiff must first show that he was rejected based solely on his handicap. 29. U.S.C. § 794(a).  Plaintiff fails to sufficiently plead that the disciplinary measures taken against him were based solely on his alleged disability. However, Plaintiff pleads that his religious exemption was denied, and pleads in this and other counts that actions were taken against him due to his failure to abide by Defendant's COVID-19 policy.

68.     Since Plaintiff fails to sufficiently plead that he was disabled pursuant to the Act and he fails to plead that he was discriminated against based solely upon that alleged disability, Plaintiff, therefore, fails to state a claim upon which relief can be granted under the Act.

69.     Additionally, the Act is inapplicable as it applies to federal agencies, programs receiving federal assistance, and federal contractors. *Id.*

70.     The Allegheny County Sheriff's Office is not a federal agency; it is a local law enforcement agency that operates at a county level. The Allegheny County Sheriff's Office is not a federal contractor, nor does it receive federal financial assistance.

71. Therefore, as the act is inapplicable in this action and Plaintiff fails to plead sufficient facts to establish otherwise, Plaintiff fails to state a claim upon which relief can be granted.

**WHEREFORE**, Defendant, Allegheny County Sheriff's Office, respectfully requests that this Court grant the within Motion and dismiss all Counts of Plaintiff's Complaint, with prejudice, for failure to state a claim upon which relief can be granted. In the alternative, Defendant, Allegheny County Sheriff's Office, respectfully requests that this Court grant the within Motion and dismiss all Counts of Plaintiff's Complaint, without prejudice, allowing Plaintiff leave to file an Amended Complaint within 20 days addressing the pleading deficiencies to all Counts.

Respectfully submitted,

By: */s/ John P. Goodrich, Esquire*
PA I.D. No.: 49648
John P. Goodrich, Esquire
Solicitor for the Allegheny County
Sheriff's Office
111 Courthouse
Pittsburgh, PA 15219
412-261-4663 (phone)
jack@goodrichpc.com